# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:09CV48-GCM-DSC

| | |
|---|---|
| WILLIAM H. FREEMAN,  )<br>      Plaintiff,  )<br>)<br>vs.  )<br>)<br>MICHAEL J. ASTRUE,  )<br>Commissioner of Social  )<br>Security Administration,  )<br>      Defendant.  )<br>)  | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #5) and "Brief" (document #6), both filed June 12, 2009; and the Defendant's "Motion for Summary Judgment" (document #7) and "Memorandum in Support of the Commissioner's Decision" (document #8), both filed August 11, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

On December 21, 2004, Plaintiff filed an application for a period of disability, Social Security disability benefits ("DIB"), and Supplemental Security Income ("SSI") alleging he was unable to work as of November `17, 2002 due to "pain from fall and lack of treatment, limited

strength, groin pain, painful to urinate" (Tr. 81). Plaintiff's claim was denied initially and upon reconsideration.

The Plaintiff filed a timely Request for Hearing, and on April 9, 2008 a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated June 12, 2008, the ALJ denied Plaintiff's claim, finding that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date; that Plaintiff suffered from chronic pain syndrome secondary to an on-the job injury, erectile dysfunction, and depression which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform unskilled work at the light[2] exertional level that required no more than occasional climbing, balancing, stooping, crouching, or crawling; and that given his functional limitations, Plaintiff was not able to perform his past relevant work.

The ALJ then shifted the burden to Defendant to show the existence of other jobs in the national economy which Plaintiff could have performed. The ALJ took testimony from a Vocational Expert ("V.E.") whose testimony was based on a hypothetical that factored in the above limitations.

---

[1] The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

2

The V.E. identified representative jobs (hand cutter, agriculture sorter) that Plaintiff could perform, with 2,500 of those positions being available in North Carolina. Accordingly, the ALJ concluded that there was substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform and that, therefore, he was <u>not</u> disabled.

By notice dated December 15, 2008, the Appeals Council denied the Plaintiff's request for further administrative review.

The Plaintiff filed the present action on February 10, 2009. On appeal, Plaintiff assigns error to the ALJ's conclusion that the opinion of Dr. T. Kern Carlton, dated April 3, 2008, was not entitled to controlling weight; his evaluation of Plaintiff's mental functioning; his determination of Plaintiff's RFC; his evaluation of Plaintiff's credibility; and his alleged failure to ask the V.E. whether there was any conflict between her testimony and the *Dictionary of Occupational Titles* ("*DOT*"). <u>See</u> Plaintiff's "Brief" at 1-2 (document #6). The parties' cross-motions for summary judgment are ripe for disposition.

## II. <u>STANDARD OF REVIEW</u>

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990); <u>see also</u> <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (<u>per curiam</u>). The District Court does not review a final decision of the Commissioner <u>de novo</u>. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986); <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979); <u>Blalock v.</u>

Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that

4

term of art is defined for Social Security purposes.[3] As an initial matter, Plaintiff argues that the ALJ did not properly weigh the opinion of his treating physician, Dr. Carlton. The Fourth Circuit has established that a treating physician's opinion on the issue of disability need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

The ALJ properly considered Dr. Carlton's opinion, but gave it diminished weight because it was not supported by the clinical findings in the record and was contrary to other medical opinions that were better supported by the record. Among the factors to be considered in deciding the amount of weight to which medical opinions are entitled are the extent to which the opinion is supported by clinical findings and the degree to which the opinion is consistent with the record as a whole. See 20 C.F.R. §§ 404.1527(d) and 416.927(d).

On April 3, 2008, Dr. Carlton prepared an assessment of Plaintiff's ability to perform

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

physical work-related activities (Tr. 150-152). In making his RFC finding, the ALJ considered this assessment along with all of the medical evidence. Dr. Carlton opined that Plaintiff could not lift and carry even 10 pounds; could stand or walk for only 30 minutes at a time and a total of less than 2 hours in an eight-hour day; and, could sit for only 30 minutes at a time and a total of about 4 hours in an eight-hour day. Dr. Carlton acknowledged, however, that these limitations were based not on clinical findings but on Plaintiff's "reports of pain" (Tr. 151, Plaintiff's "Brief" at 8 (document #6)).

Indeed, the record does not support the degree of functional limitations in lifting, carrying, sitting, and standing indicated by Dr. Carlton. Instead, the ALJ properly concluded that the medical record provides substantial evidence that Plaintiff suffered from, but was not disabled by, his combination of impairments.

Plaintiff injured his left ankle, left hip, and groin area in a fall while working in November 2002 (Tr. 244, 354). X-rays of Plaintiff's left hip suggested an incomplete fracture through the femoral neck (Tr. 357-360). X-rays of his left ankle were normal and did not show any fracture (Tr. 362).

In January 2003, Plaintiff was still using crutches although he had been advised that they were no longer medically necessary (Tr. 350). He had slight swelling of the left ankle but had full range of motion in the left ankle, knee, and hip, although he complained of continued tenderness (Tr. 350). Dr. Foster's diagnosis was rib contusions, and sprains of the left ankle, knee, and hip (Tr. 350). Later that month, Dr. Foster reported that the sprains were resolving (Tr. 349).

In March 2003, Dr. Foster indicated that Plaintiff was gradually building up strength in his left leg and assessed strength at 4/5 as compared to 5/5 on the right (Tr. 347). Dr. Foster indicated that Plaintiff should still not climb at unprotected heights but that he could start lifting up to 50

pounds (Tr. 347). Later that month, Plaintiff had full range of motion in his left hip but had pain on full internal/external rotation of the hip (Tr. 346). Plaintiff reported that he could not lift more than 30 pounds and that he felt that he could not work full-time (Tr. 346).

In April 2003, Dr. Foster reported that an MRI of Plaintiff's hip was "[t]otally normal" and that he did not examine him because his prior examination was "basically normal" (Tr. 345). In May 2003, Dr. Foster reported that Plaintiff's initial complaints were consistent with the injuries he had sustained in his fall; but, he indicated that he could not find any objective cause for his current complaints (Tr. 344). Dr. Foster noted that Plaintiff did not feel that he could return to his prior job but that "this is not my opinion" and he indicated that he felt that Plaintiff could go back to work without restrictions (Tr. 344).

With respect to his groin injury, Plaintiff underwent a testicular ultrasound and a penile Doppler ultrasound in May 2003 (Tr. 260, 261). The results of both tests were normal (Tr. 260, 261). Dr. DeBord felt that a large component of Plaintiff's erectile dysfunction was psychogenic (Tr. 258).

Dr. Carlton treated Plaintiff from March 2005 through December 2005 (Tr. 225-234, 244-246) and from December 2006 through March 2008 (Tr. 154-156, 212-223). In his initial examination on March 1, 2005, Plaintiff told Dr. Carlton that at its worst, his pain is a 10 on a 10-point scale, but that it is usually a 4 or 5 and increases with activity (Tr. 244). Plaintiff reported that pain limited his lifting, sitting, and standing (Tr. 244). Plaintiff was taking Prevacid[4] and Tylenol 3 three or four times a week and reported that this helped with his pain (Tr. 245). On physical

---

[4] Prevacid is indicated for short-term treatment of an active duodenal ulcer. *See Physicians' Desk Reference* ("*PDR*") 3209 (58th ed. 2004).

examination, Dr. Carlton noted that Plaintiff had fairly good range of lumbar motion with no lower lumbar tenderness; but, had tenderness and increased pain reported with left hip motion (Tr. 245). Plaintiff's reflexes and sensation were normal; there was no muscle atrophy; and strength was 5/5 throughout (Tr. 246). Dr. Carlton diagnosed left hip sprain, chronic pain syndrome, depression, and erectile dysfunction (Tr. 246). He indicated that Plaintiff needed treatment for his depression and pain. Dr. Carlton prescribed ten Tylenol 3 tablets to be used sparingly (Tr. 246). When he returned to Dr. Carlton on March 30, 2005, Plaintiff reported that the Tylenol 3 helped but he was still having pain (Tr. 234).

Plaintiff rated his pain level between 7 or 8 in April 2005 (Tr. 235) and 4 in November and December 2005 (Tr. 228, 229). He rated his pain at the 5 and 7 level between December 2006 and October 2007 (Tr. 213-223).

The medical record supports Dr. Morton's February 2005 functional assessment (Tr. 204-211). He found that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally and could sit or stand for about 6 hours in an eight-hour day (Tr. 211). Dr. Morton also indicated that Plaintiff could frequently balance and occasionally climb, stoop, kneel, crouch, or crawl (Tr. 208). In November 2005, Dr. Warren affirmed Dr. Morton's assessment (Tr. 185). The medical record does not indicate a significant deterioration of Plaintiff's physical condition after that date.

Given the marked inconsistencies between Dr. Carlton's assessment of Plaintiff's functional capacity and his underlying treatment notes, as well as other evidence in the record, the ALJ correctly declined to afford his opinion controlling weight.

Plaintiff next contends that the ALJ erred in evaluating his mental impairment and failed to indicate the degree of functional limitations that resulted from it. To the contrary, the ALJ fully

8

evaluated Plaintiff's mental impairment and found it resulted in only mild limitations in activities of daily living and social functioning and in mild difficulties in maintaining concentration, persistence, and pace.

A licensed psychologist, Jeanne Murrone, Ph.D., conducted a mental status evaluation of Plaintiff in April 2005 (Tr. 165-171). Plaintiff was described as anxious and sad, with anger and frustration at his lack of medical treatment (Tr. 169). Dr. Murrone diagnosed a recurrent moderate to severe major depressive disorder with melancholic features but without psychotic features and assessed Plaintiff's global assessment of functioning ("GAF") at 65[5] (Tr. 170).

The ALJ's finding as to the limitations resulting from Plaintiff's psychological condition is supported by the record as a whole. The ALJ found that Plaintiff's depression only resulted in mild limitations in activities of daily living and social functioning and in mild difficulties in maintaining concentration, persistence and pace. He concluded that it might preclude performance of complex or detailed duties associated with skilled work but did not prevent performing unskilled work duties (Tr. 18). This finding is consistent with the assessment of Dr. Breslin who indicated that Plaintiff had moderate difficulty in understanding, remembering, and carrying out detailed instructions and in maintaining attention and concentration for extended periods (Tr. 200) but concluded that he appeared able to understand simple instructions and able to maintain the level of attention and concentration required to perform simple, routine, repetitive tasks (Tr. 202).

In his third assignment of error, Plaintiff argues that the ALJ did not comply with Social

---

[5] A GAF rating between 61 and 70 represents a person with only some mild symptoms. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994). The higher the rating within a given range the less severe is the difficulty. Thus, the record contains evidence which indicates that Plaintiff's psychological symptoms were mild. Such symptoms are consistent with the ALJ's finding that Plaintiff was unable to perform skilled work but could perform unskilled work.

Security Ruling ("SSR") 96-8p because he failed to make a function-by-function assessment of Plaintiff's capabilities and limitations. The record shows, however, that the ALJ made such an assessment. Moreover, based on the medical record, summarized above, the ALJ's finding that Plaintiff had the physical ability to perform light work that did not require more than occasional climbing, balancing, stooping, crouching, or crawling is supported by substantial evidence.

In his decision, the ALJ stated that he was making a function-by-function assessment of Plaintiff's RFC (Tr. 18). The ALJ addressed both the exertional and non-exertional limitations resulting from Plaintiff's impairments. Id. He found that Plaintiff's impairments resulted in exertional limitations consistent with light work. Such work involves lifting or carrying 10 pounds frequently and up to 20 pounds occasionally and may require standing/walking for about six hours per day. The ALJ also indicated that Plaintiff had postural limitations in that he could only occasionally climb, balance, stoop, crouch, or crawl. The record does not indicated that Plaintiff has any manipulative, visual, communicative, or environmental limitations. Finally on this point, Plaintiff, who has the burden of proof, has not indicated any specific work-related function that the record shows that the ALJ failed to consider in making his RFC finding.

The ALJ properly applied the standard for determining a claimant's Residual Functioning Capacity based on subjective complaints of pain and the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was <u>not</u> fully credible. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th

Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's chronic pain syndrome secondary to an on-the job injury, erectile dysfunction, and depression – which could be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ also correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work," and found Plaintiff's subjective description of his limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994), citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the ALJ clearly found an inconsistency between Plaintiff's claims of inability to work and his medical records, as well as with his objective ability to carry on with moderate daily activities, that is, living

alone, doing his own cooking using a microwave, and taking care of all indoor household chores (Tr. 369-370). These activities are inconsistent with Plaintiff's testimony about the extent to which his pain impacts his functional capability and, therefore, reflect upon the credibility of the disabling degree of subjective limitations Plaintiff attributed to his impairments.

The ALJ properly found that Plaintiff's subjective complaints were not fully credible to the extent that he indicated that his symptoms resulted in functional limitations that were disabling. The ALJ concluded that Plaintiff's hip condition and resulting pain prevented him from performing medium or heavy work and that his mental limitations impacted his ability to perform semi-skilled or skilled work.

Finally, Plaintiff asserts that the ALJ erred when he did not question the V.E. as to whether there was any conflict between her testimony and the *DOT* concerning the functional requirements of the jobs she testified that Plaintiff could perform. As discussed above, the ALJ obtained vocational testimony to determine the extent to which Plaintiff's non-exertional limitations in climbing, balancing, stooping, crouching, and crawling reduced the range of light work he could perform and whether there remained jobs that existed in significant numbers in the national economy that he could perform.

The V.E. testified that given limitations similar to those in Plaintiff's RFC, a person of his age, education, and past work experience could not perform Plaintiff's past jobs; but, there were other jobs that such a person could perform (Tr. 379). She identified work as a hand cutter and as an agricultural sorter as two examples of such jobs (Tr. 379)

Plaintiff argues that the ALJ failed to inquire if there were any conflicts between the V.E.'s testimony and the *DOT*; however, Plaintiff has not identified any such conflicts and the record does

not show that any conflicts exist. In his decision, the ALJ specifically noted that the V.E.'s description of the jobs in question was consistent with the *DOT*. Accordingly, this final assignment of error must be overruled as well.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #5) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #7) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this

Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Graham C. Mullen.

**SO RECOMMENDED AND ORDERED**.

Signed: August 20, 2009

David S. Cayer
United States Magistrate Judge